UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**15-080**

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| VS. | § | CRIMINAL NO. H- |
| | § | |
| KIRK LAWRENCE BRANNAN | § | (UNDER SEAL) |
| CHUCOBIE LANIER | § | |
| DAVID LEE MORRIS | § | |
| DERWIN JEROME BLACKSHEAR | | |



Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

United States District Court
Southern District of Texas
FILED

FEB 1 8 2015

David J. Bradley, Clerk of Court

## INDICTMENT

### INTRODUCTION

At all times material to this indictment:

1. Defendant Kirk Lawrence Brannan ("BRANNAN") was a real estate and tax attorney licensed in Texas who practiced law in Lake Jackson, Texas.

2. Beach Candy, L.P. ("Beach Candy") was a Texas limited partnership that bought and sold beach houses in Freeport and Surfside, Texas. BRANNAN was the registered agent for Beach Candy.

3. Brannan Resort Rentals ("Brannan Resort") was a business owned by BRANNAN.

4. Defendant Chucobie Lanier aka Shucorbie Lanier ("LANIER") operated under the name KNJ Marketing & Investments.

5. Defendant David Lee Morris ("MORRIS") operated under the name Hy-Tech Investments.

1

6.     Defendant Derwin Jerome Blackshear ("BLACKSHEAR") operated under the names Level One Mortgage Group, Level 1 Investments, and K-Mack Communications.

7.     The Federal Deposit Insurance Corporation (FDIC) was an agency of the United States that insured the deposits of member banks against loss with the purpose of preventing their collapse and instilling public confidence in the nation's banking institutions.

8.     Wells Fargo Bank N.A. ("Wells Fargo") was a financial institution the deposits of which were insured by the FDIC.

9.     A real estate mortgage loan is a loan to finance the purchase of real estate in which the lender receives a lien on the purchased property as collateral for the loan. Upon default by the borrower, the lender may foreclose on the property.

10.    A real estate appraiser is an individual qualified by education, training, and experience to estimate the value of real estate. An estimate of value is set forth in a real estate appraisal. Appraisals are normally based on the sales prices (known as "comps") of at least three comparable parcels of real estate in the same area as the subject property. Banks that make mortgage loans rely on appraisals to determine whether the value of a property to be purchased is sufficient to secure the loan for the purchase.

11.    The documents used to apply for a real estate mortgage loan are

collected by loan officers and loan processors at the mortgage broker's office who then transmit the documents to the lender. These documents include, but are not limited to:

  a. The uniform loan application.
  b. Borrower's credit report.
  c. Verification of employment.
  d. Occupancy affidavit, in which the borrower states that he or she intends to reside at the property
  e. Verification of rent or mortgage
  f. Lease agreements
  g. Verification of deposit, which verifies that the borrower has the bank account balances claimed in the loan application
  h. Sales contract

12. A mortgage loan is closed at a title company. The title company's escrow officers are responsible for depositing the monetary instruments and funds provided by the borrower and funds wire transferred by the lender or on its behalf to the title company's escrow account, and, when authorized by the parties to the transaction and the lender, for disbursing the funds from the escrow account to various individuals and entities as detailed on the U.S. Department of Housing and Urban Development Settlement Statement (the "HUD-1 Settlement Statement").

## COUNT ONE
### (Conspiracy, 18 U.S.C. § 1349)

A. INTRODUCTION

1. The Grand Jury adopts, realleges, and incorporates herein the Introduction section of the Indictment as if set out fully herein.

B.   THE CONSPIRACY AND ITS OBJECTS

2.   From in or about 2005, and continuing to on or about May 15, 2009, in the Southern District of Texas and elsewhere, the defendants,

**KIRK LAWRENCE BRANNAN,
CHUCOBIE LANIER,
DAVID LEE MORRIS, and
DERWIN JEROME BLACKSHEAR,**

did knowingly combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury, to commit the following offenses against the United States:

(a) to use and cause to be used interstate wire communications in the execution of a scheme or artifice to defraud that affected a financial institution, in violation of 18 U.S.C. § 1343 (wire fraud);

(b) to execute a scheme or artifice to defraud a financial institution and to obtain funds under the custody and control of the financial institution by means of false pretenses in violation of 18 U.S.C. § 1344 (bank fraud).

C.   MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

3.   BRANNAN, individually and through Beach Candy and his family members, owned multiple beach homes in Freeport and Surfside, Texas (the "beach homes").

4.  LANIER offered to obtain buyers for BRANNAN's beach homes if BRANNAN would kick-back to LANIER the proceeds from the sales that were above an agreed upon amount.

5.  BRANNAN, through Beach Candy, conducted three supposed sales of beach homes to three of his family members at exorbitant prices in which no money changed hands and which produced fraudulent HUD-1 Settlement Statements.

6.  The HUD-1 Settlement Statements from BRANNAN's three inter-family "sales" were used by appraisers as comps to support inflated valuations, sales prices, and loan amounts for the sales of BRANNAN's remaining beach homes.

7.  MORRIS, BLACKSHEAR, and other conspirators recruited and paid individuals known as "straw buyers" who agreed to sign mortgage loan documents for the purchase of the beach homes and other properties even though the straw buyers had no intention of residing at the properties or repaying the loans on their own.

8.  MORRIS and BLACKSHEAR falsely told the straw buyers that MORRIS and BLACKSHEAR would make the mortgage payments on the purchased homes or that the mortgage payments would be covered by payments from renters.

9.  For the mortgage loans obtained by the straw buyers, MORRIS, BLACKSHEAR, and other conspirators caused false information to be listed in the

loan applications, including misrepresentations about the straw buyers' marital status, employment, monthly income, and assets, and misrepresentations that the straw buyers had the ability to repay the loans and intended to reside at the properties.

10. Typically, each time a beach home was sold to a straw buyer, BRANNAN, through Beach Candy, Brannan Resort, or a family member, kicked-back to LANIER the excess sales proceeds in a transaction that was not reflected on the HUD-1 Settlement Statement for the sale.

11. For each sale to a straw buyer, BRANNAN or a family member verified on the HUD-1 Settlement Statement that, "I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction," even though the HUD-1 Settlement Statement did not reflect the kick-back to LANIER.

12. After receiving the excess sales proceeds from BRANNAN, LANIER forwarded the funds to coconspirators, including MORRIS and BLACKSHEAR, who then paid the straw buyers.

13. MORRIS, BLACKSHEAR, and the straw buyers failed to make payments on the loans, resulting in losses to the lenders and causing the beach homes and other properties to go into foreclosure.

D.  ACTS IN FURTHERANCE OF THE CONSPIRACY

14. In furtherance of the conspiracy, and to effect the objects of the conspiracy, the following acts, among others, were committed in the Southern District of Texas and elsewhere.

I.  **Alleged Inter-Family Sales**

**2606 Lake Court (aka 2604 Lake Court) Property**

(a)  On or about August 16, 2006, BRANNAN signed a HUD-1 Settlement Statement that purported to show the sale of 2606 Lake Court to a BRANNAN family member for $825,000.

(b)  On or about August 21, 2006, BRANNAN signed a Warranty Deed with Vendor's Lien that purported to sell the property to a BRANNAN family member.

(c)  In or about November 2006, an appraiser obtained from Brannan Resort the HUD-1 Settlement Statement for the alleged sale of the property.

**101 Seagull Property**

(d)  On or about August 17, 2006, BRANNAN signed a HUD-1 Settlement Statement that purported to show the sale of 101 Seagull to a BRANNAN family member for $975,000.

(e)  On or about August 21, 2006, BRANNAN signed a Warranty Deed with Vendor's Lien that purported to sell the property to a BRANNAN family member.

(f) In or about November 2006, an appraiser obtained from Brannan Resort the HUD-1 Settlement Statement for the alleged sale of the property.

(g) On or about March 30, 2007, a BRANNAN family member signed a HUD-1 Settlement Statement for the sale of the property to straw buyer R.G.

(h) On or about April 10, 2007, R.G. received $25,000.

**2438 Blue Water Hwy. Property**

(i) On or about August 18, 2006, BRANNAN signed a HUD-1 Settlement Statement that purported to show the sale of 2438 Blue Water Hwy. to a BRANNAN family member for $975,000.

(j) On or about August 21, 2006, BRANNAN signed a Warranty Deed with Vendor's Lien that purported to sell the property to a BRANNAN family member.

(k) In or about November 2006, an appraiser obtained from Brannan Resort the HUD-1 Settlement Statement for the alleged sale of the property.

**II.    Sales to Straw Buyers**

**319 Francis Cove Property**

(l) In or about 2005, MORRIS recruited R.V. to act as the purchaser of 319 Francis Cove.

(m) On or about November 8, 2006, an appraiser appraised the property based on the sales prices of the alleged inter-family sales of 2606 Lake Court, 101 Seagull, and 2438 Blue Water Hwy.

(n) On or about December 11, 2006, R.V. signed a residential loan application falsely stating her address, employer, position, monthly income, and that the property would be her primary residence.

(o) On or about December 11, 2006, BRANNAN signed the HUD-1 Settlement Statement for the sale of the property.

(p) On or about December 12, 2006, LANIER received $283,706 from the sale of the property.

(q) On or about December 14, 2006, MORRIS received $133,500.

(r) On or about December 18, 2006, straw buyer R.V. received $111,817.

**2454 Blue Water Hwy. Property**

(s) In or about 2007, MORRIS recruited J.R. to act as the purchaser of 2454 Blue Water Hwy.

(t) On or about March 5, 2007, an appraiser appraised the property based on the sales prices of the alleged inter-family sales of 2606 Lake Court, 101 Seagull, and 2438 Blue Water Hwy.

(u) On or about March 30, 2007, J.R. signed a residential loan application falsely stating his current address, monthly income, and that the property would be his primary residence.

(v) On or about March 30, 2007, J.R. signed an Occupancy Declaration falsely declaring that he intended to occupy the property as his primary residence.

(w) On or about March 30, 2007, BRANNAN signed the HUD-1

Settlement Statement for the sale of the property.

(x) On or about April 5, 2007, LANIER received $490,000 partly from the sale of the property.

(y) On or about April 10, 2007, MORRIS received $285,000.

(z) On or about April 10, 2007, straw buyer J.R. received $40,000.

**100 Stanek Property**

(aa) In or about 2007, BLACKSHEAR recruited A.D. to act as the purchaser of 100 Stanek.

(bb) On or about June 11, 2007, K-Mack Communications falsely certified that it employed A.D. as an account manager.

(cc) On or about June 12, 2007, A.D. signed a residential loan application falsely stating her marital status, employer, position, and that the property would be her primary residence.

(dd) On or about June 12, 2007, A.D. signed an Occupancy and Financial Status Affidavit declaring that the property would be her primary residence and that her financial information in the residential loan application was accurate.

(ee) On or about June 12, 2007, BRANNAN family members signed the HUD-1 Settlement Statement for the sale of the property.

(ff) On or about June 15, 2007, LANIER received $195,000 from the sale of the property.

(gg) On or about June 19, 2007, BLACKSHEAR received $50,000.

(hh)   On or about June 19, 2007, straw buyer A.D. received $10,000.

**2020 Blue Water Hwy. Property**

(ii)   In or about 2007, BLACKSHEAR recruited J.H. to act as the purchaser of 2020 Blue Water Hwy.

(jj)   On or about July 17, 2007, K-Mack Communications falsely certified that it employed J.H. as an account manager.

(kk)   On or about July 24, 2007, J.H. signed a residential loan application falsely stating her employer, position, income, and that the property would be her primary residence.

(ll)   On or about July 24, 2007, J.H. signed an Occupancy and Financial Status Affidavit declaring that the property would be her primary residence and that her financial information in the residential loan application was accurate.

(mm)   On or about July 24, 2007, BRANNAN signed the HUD-1 Settlement Statement for the sale of the property.

(nn)   On or about July 25, 2007, LANIER received $197,000 from the sale.

(oo)   On or about July 26, 2007, BLACKSHEAR received $49,000.

(pp)   On or about July 27, 2007, straw buyer J.H. received $22,000.

In violation of Title 18, United States Code, Section 1349.

## COUNT TWO
## (Bank Fraud, 18 U.S.C. §§ 1344 and 2)

A.  INTRODUCTION

1. The Grand Jury adopts, realleges, and incorporates herein the Introduction section of the Indictment as if set out fully herein.

B.  THE SCHEME AND ARTIFICE

2. From in or about 2005, and continuing until on or about December 18, 2006, in the Southern District of Texas and elsewhere, the defendants,

**KIRK LAWRENCE BRANNAN,
CHUCOBIE LANIER, and
DAVID LEE MORRIS,**

in the specific count listed below, aided and abetted by each other and others known and unknown to the grand jury, did knowingly execute and attempt to execute a scheme and artifice to defraud Wells Fargo, and to obtain moneys, funds, and property owned by and under the custody and control of Wells Fargo by means of false and fraudulent pretenses, representations, and promises.

C.  MANNER AND MEANS OF THE SCHEME AND ARTIFICE

3. The Grand Jury adopts, realleges, and incorporates herein the manner and means allegations in Paragraphs three through thirteen of Count One as if set out fully herein.

D.  EXECUTION OF THE SCHEME AND ARTIFICE

4.  On or about the date listed below, in the Southern District of Texas and elsewhere, the defendants listed below, for the purpose of executing the aforementioned scheme and artifice to defraud did knowingly cause the following mortgage loan application to be submitted to Wells Fargo:

| Count | Loan Applicaiton Date | Defendants | Property | Straw Buyer | Loan amount |
|---|---|---|---|---|---|
| 2 | 12/11/06 | KIRK LAWRENCE BRANNAN, CHUCOBIE LANIER, DAVID LEE MORRIS | 319 Francis Cove, Freeport, TX 77541 | initials R. V. | $688,750.00 |

In violation of Title 18, United States Code, Sections 1344 and 2.

## NOTICE OF FORFEITURE
## 18 U.S.C. § 982(a)(2)

Pursuant to Title 18, United States Code, Section 982(a)(2), the United States gives notice to defendants,

**KIRK LAWRENCE BRANNAN,
CHUCOBIE LANIER,
DAVID LEE MORRIS, and
DERWIN JEROME BLACKSHEAR**

that upon conviction of the offenses charged in Counts 1 and 2, the United States intends to seek forfeiture of all property constituting or derived from proceeds obtained, directly or indirectly, as the result of such offenses.

## Money Judgment

Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

## Substitute Assets

Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of the defendants,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL:

Original Signature on File

_____
FOREPERSON OF THE GRAND JURY


KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
Robert S. Johnson
Assistant United States Attorney